UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY K. MUSZYNSKI,

    *Plaintiff*,

v.                                  CASE NO. 10-CV-13590

COMMISSIONER OF             DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,              MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance (DIB) benefits, and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 13.)

Plaintiff was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 10 at 12, 24, 96, 102.) Plaintiff's employment history includes work as a general laborer and overnight stocker. (Tr. at 135.) Plaintiff was still working at the time she filed her applications. (*Id.*)

Plaintiff filed the instant claims (DIB and SSI) on July 2, 2009, alleging that she became unable to work on December 26, 2006. (Tr. at 96, 102.) The claims were denied at the initial administrative stages. (Tr. at 48, 49.) In denying Plaintiff's claims, the Defendant Commissioner considered chronic pulmonary obstructive disease (COPD) as a possible basis of disability. (*Id.*) On November 13, 2009, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Martha M. Gasparovich, who considered the application for benefits *de novo*. (Tr. at 9-19.) In a decision dated November 20, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on January 15, 2010. (Tr. at 5-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 9, 2010, when, after the review of additional exhibits[2] (Tr. at 463-99), the Appeals Council denied Plaintiff's request for review. (Tr.

---

[2] In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

at 1-3.) On September 9, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

5

> or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 26, 2006, the alleged onset date, and that Plaintiff met the insured status requirements through December 31, 2011. (Tr. at 14.) At step two, the ALJ found that Plaintiff's chronic obstructive pulmonary disease (COPD), migraine headaches, and osteoarthritis were "severe" within the meaning of the second sequential step. (Tr. at 15.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. at 18.) At step five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work. (Tr. at 15-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 18-19.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated by the Pulmonary and Sleep Specialists in Monroe, Michigan. (Tr. at 176-89.) Plaintiff was assessed with "status post pulmonary hemorrhage[,] COPD exacerbation[,] [and] [t]obacco use." (Tr. at 180.)

A chest x-ray taken in October 2006 showed a "normal size heart," "[p]atchy and interstitial densities in both lungs which could be due to pneumonia[,]" and noted that the "abnormalities in the lungs are not seen . . . ." (Tr. at 329, 420.)

From December 26, 2006, through January 2, 2007, Plaintiff was hospitalized following an emergency room visit where she complained of shortness of breath and coughing up blood. (Tr. at 223, 229.) Plaintiff was "admitted to the ICU with severe hypoxemia, rule out interstitial lung disease, possibly pulmonary hemorrhagic symptoms." (Tr. at 224.) "However, the AFB came back as negative." (*Id.*) Plaintiff's anemia was monitored and remained stable. She "improved slowly on the steroids, and finally . . . was stable and was cleared by pulmonary to be discharged home on prednisone . . . ." (*Id.*) While in the hospital, an echocardiogram performed on December 31, 2006, was "normal" with "mild mitral regurgitation." (Tr. at 298.) Plaintiff had also been placed on a heart monitor while hospitalized and the "Holter show[ed] normal sinus rhythm with evidence of paroxysmal atrial tachycardia[,] [n]o pauses, heart blocks, or complex cardiac arrhythmias." (Tr. at 328.) Although a chest x-ray taken upon admission showed "[b]ilateral pulmonary infiltrates" (Tr. at 292), another chest x-ray on Plaintiff's discharge date of January 2, 2007, revealed "[r]esolving bilateral pneumonitis." (Tr. at 201.)

On January 15, 2007, Dr. Sahair Mugawish, M.D., noted that Plaintiff "is obese, [but] appears in no distress." (Tr. at 180.) Dr. Mugawish stated that Plaintiff's "physical exam is unremarkable, including normal breath sounds, [and her] [c]hest x-ray was reviewed and [it] showed almost clearing of the bilateral pulmonary infiltrate." (Tr. at 180.)

On January 23, 2007, a chest x-ray showed "[p]rominence of interstitial markings in both lungs, unchanged when compared to previous study dated 1/2/2007." (Tr. at 414.) The doctor went on to note that, "[i]n appropriate clinical settings this could represent interstitial pneumonia" and that "[t]he heart is normal in size." (Tr. at 414.)

On February 20, 2007, Plaintiff again sought treatment at the emergency room because of "complaint of chronic cough and shortness of breath." (Tr. at 400.) However, "spirometry and lung

8

volumes appear[ed] within normal limits, [and] gas transfer [was] decreased, but normal per alveolar volume." (Tr. at 400.)

A chest x-ray taken on May 8, 2007, and was "normal." (Tr. at 181, 398.) On October 6, 2007, Moses Alviar, M.D., diagnosed Plaintiff with "COPD with associated asthma and bronchitis," "[o]besity with a BMI of 42," "[g]astroesophageal reflux disease[,] [and] [a]nemia probably secondary." (Tr. at 450.)

A Physical Residual Functional Capacity (RFC) Assessment concluded that Plaintiff was able to occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 456.) The assessment concluded that Plaintiff was frequently limited in the ability to balance, stoop, crouch, kneel and crawl, and occasionally limited in the ability to climb. (Tr. at 457.) Plaintiff was found to be free of any manipulative, visual, communicative, or environmental limitations, except that she should avoid concentrated exposure to humidity and fumes. (Tr. at 458-59.) The assessment found Plaintiff to be "partially credible." (Tr. at 460.) There was no treating source opinion for comparison. (Tr. at 461.)

In Plaintiff's Daily Function Report, she stated that on the days that she is unable to get out of bed, her children come over and take care of her. (Tr. at 153.) Plaintiff cares for her dog and is able to care for her own personal hygiene. She goes outside three times a week when she goes to work. She's able to drive a car, ride in a car, shop in stores for groceries, and handle her own finances, but has to be reminded from her children to take her medications and to eat. She is able to make simple meals for herself, but counts on her daughter to cook other meals. She is able to do dishes, dust, wipe counters, do laundry, fold clothes, make her bed, and load and empty the dishwasher. (Tr. at 154-56.) Plaintiff also indicated that she reads, watches television, sews, plays

9

cards, crochets, plays croquet, and plays miniature golf. (Tr. at 157.) She also stated that her children visit four times a week, and her brother visits approximately every two weeks. (Tr. at 157.) Plaintiff stated that she uses a buggie/cart to walk from her car to the store and to walk around the store. (Tr. at 159.)

Plaintiff testified at the administrative hearing on November 13, 2009, that she was working at Walmart as a stock worker, also called a general laborer, for less than 20 hours per week. She works four hours at a time, and takes breaks whenever she needs them at a rate of up to one break per hour on bad days. (Tr. at 32, 36.) However, later in the hearing, Plaintiff clarified that she was currently on medical leave because she was involved in a car accident in August 2009. (Tr. at 46.)

The Vocational Expert ("VE") also testified at the administrative hearing and was asked to assume a person of Plaintiff's background

> [with an] inability to stand or walk more than six hours in an 8-hour day, but could sit up to six hours of an eight hours - - of eight hours. Would be limited in lifting 20 pounds occasionally and 10 pounds frequently. No pushing or pulling of levers or pedals with any of the extremities. Kneeling, crouching, crawling, bending, climbing, squatting would be limited to occasional. Reaching would be limited to no more than two-thirds of the workday activity. All work would have to be performed at a nonproduction pace.

(Tr. at 43.) When asked whether such a person could perform Plaintiff's past relevant work, the VE indicated that she could not, other than possibly the telemarketer work. (Tr. at 43.) Limiting the work to unskilled work, the VE testified that such a person could perform the 1,000 available jobs in security, such as greeter or entrance control, the 1,000 available jobs as a sorter or checker, the 1,000 available jobs as a packager, and the 1,000 available jobs as a counter clerk or sales clerk. (Tr. at 44.) The relevant market considered by the VE was Southeast Michigan. (*Id.*)

The ALJ then asked the VE to assume the same background and limitations with the addition of a limitation that "walking and standing . . . be limited to two of eight hours and lifting

would be limited to 10 pounds." (Tr. at 44.) The VE testified that such a person could perform jobs in the sedentary range of unskilled work, such as surveillance system monitor (1,000), sorting and checking jobs (1,000), packaging (1,000), and telephone and telemarketing jobs (1,000). (Tr. at 44-45.) When asked whether such a person could perform any work if she needed to take breaks or lie down once an hour, the VE responded that "the need to take a break every, every hour for 15 minutes is not generally tolerated in an 8-hour workday. . . . [and that] would be certainly an accommodated situation if an employer were to provide such an opportunity to do that." (Tr. at 45.)

The VE indicated that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (Tr. at 44.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 15-17.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

11

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence Standard

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the "Appeals Council erred in making credibility determinations which were not substantially supported by the record as a whole." (Doc. 12 at 6-8.) Plaintiff further contends that the "ALJ erred in determining that the medical opinions of Plaintiff's treating physicians were not entitled to controlling weight." (Doc. 12 at 8-9.) Finally, Plaintiff requests a remand under the sixth sentence of 42 U.S.C. § 405(g) to allow the ALJ to consider the "new and material medical evidence" "submitted to the Appeals Council[.]" (Doc. 12 at 9-10.)

### a. Appeals Council Error

Plaintiff submitted additional medical records that the "ALJ never had an opportunity to review" to the Appeals Council. (Doc. 12 at 7-8.) The Appeals Council denied review, stating only the following:

> In looking at your case, we considered the reasons you disagree with the decision and additional evidence listed on the enclosed Order of Appeals Council.

> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> The decision states that there were no medical reports after 2007 to support a finding that your impairments were of the same level of severity that you had at the onset of your condition (Dec, page 6). While the additional progress notes show that you were seen in November of 2008 and that you continued to be seen for follow-up every three months, there is no showing that your impairments worsened. Findings on physical examinations were unremarkable and there was no evidence of the need for emergency room intervention.

(Tr. at 1-2.) Plaintiff contends that the "Appeals Council did not provide specific reasoning for rejecting Ms. Muszynski's credibility based on the new evidence . . . [and] failed to consider the whole record . . . ." (Doc. 12 at 8.) This argument is rather puzzling as the Appeals Council made no findings relating to Plaintiff's credibility. More importantly, however, Plaintiff asks this Court to review the Appeals Council's decision to deny review and this Court is not authorized to do so, as it is the ALJ's Decision which became the final and reviewable decision of the Commissioner.

This Court's review is confined to the evidence presented to the ALJ to determine whether the ALJ's decision is supported by substantial evidence. *Wyatt v. Sec'y of Health and Human Servs.,* 974 F.2d 680, 685 (6th Cir. 1992); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003). Any evidence presented to the Appeals Council may be considered only for purposes of remand pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). In addition, "the scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review." *Nash v. Comm'r of Soc. Sec.*, No. 1:08-cv-132, 2009 WL 1531835, at *5 (W.D. Mich. June 1, 2009) (citing *Matthews v. Apfel*, 239 F.3d 589, 594 (3rd Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.")). Therefore, I suggest that this ground cannot support Plaintiff's motion for summary judgment.

### b. Weight Given to Treating Source Opinions

Although Plaintiff labels her second issue as "the ALJ's erred in determining that the medical opinions of Plaintiff's treating physicians were not entitled to controlling weight," in the text of the brief, Plaintiff states that the "ALJ relied on the opinion of Dr. Mugawish through 2007 . . . [and] [t]he ALJ only applied this conclusion through 2007 as the new and material evidence was not available at the time of the hearing." (Doc. 12 at 9.) Plaintiff then goes on to clarify:

> The Appeals Council did not comply with 20 C.F.R. 404.1520(d) by failing to provide good reasons for not giving controlling or substantial weight to the opinion of the claimant's treating physicians after 2007. The Appeals Council was in receipt of the new and material evidence. The ALJ relied on the opinion of Dr. Mugawish through 2007. The Appeals Council failed to address why the opinion should not be extended based upon the supplied medical records.

(Doc. 12 at 9.) The substance of Plaintiff's argument, then, is that the Appeals Council should have relied on the opinion of Plaintiff's treating physician, Dr. Mugawish, just as the ALJ did. Since this issue also challenges the Appeals Council's decision to deny review, I suggest that this argument fails for the same reason as her first argument.

### c. Sentence Six Remand

As mentioned, Plaintiff seeks a sentence six remand to enable the Commissioner to consider new evidence. The Supreme Court only recognizes two kinds of remands involving social security cases: those pursuant to sentence four and those pursuant to sentence six of 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991); *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990). The Supreme Court concluded that Congress's explicit delineation in § 405(g) regarding circumstances under which remands are authorized clearly showed that Congress intended to limit the district court's authority to enter remand orders in these two types of cases. *Melkonyan*, 501 U.S. at 100. Sentence four allows a district court to remand in conjunction with a judgment affirming, modifying or reversing

14

the Commissioner's decision. *Id.* at 99-100. Sentence six allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Id.* at 100.

The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

In the instant case, Plaintiff would like to remand for consideration of the evidence presented only to the Appeals Council, and not to the ALJ. (Doc. 12 at 9-10; Tr. at 463-99.) Plaintiff contends that this evidence "was unavailable prior to the hearing due to clerical error." (Doc. 12 at 9-10.)

I suggest that Plaintiff's purported reason falls far short of good cause. "'Good cause' is shown for a sentence six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new"). Furthermore, as was the case in *Bass*, Plaintiff "has not detailed any obstacles that prevented [her] from entering this evidence, all of

15

which predates the hearing before the ALJ . . . ." *Bass*, 499 F.3d at 513. "The good cause standard focuses on the actions taken by the party seeking to add evidence to the record. It is not satisfied by conclusory statements that the ALJ violated social security regulations." *Shears v. Comm'r of Soc. Sec.*, No. 1:09-cv-1011, 2010 WL 3385518, at *5 (W.D. Mich. Aug. 2, 2010).

I therefore recommend that Plaintiff has not met her burden to justify a Sentence Six remand.

### 3.     Substantial Evidence Supports the ALJ's Decision

I further suggest that substantial evidence supports the ALJ's conclusion that Plaintiff retains the RFC to perform a limited range of sedentary work. Plaintiff has COPD; however, this impairment does not appear to preclude substantial gainful activity. Plaintiff is able to work part-time at Walmart. (Tr. at 32, 36.) The medical evidence reveals that even with COPD, her chest x-rays are normal other than temporary changes due to recurring pneumonia. (Tr. at 329, 420.) Even after hospitalization for shortness of breath, steroid treatment resolved her condition, allowing her to return home. (Tr. at 224.) An echocardiogram and Holter monitor study were both normal. (Tr. at 298, 328.) Although a chest x-ray taken upon admission showed "[b]ilateral pulmonary infiltrates" (Tr. at 292), by the discharge date of January 2, 2007, the chest x-ray revealed "[r]esolving bilateral pneumonitis." (Tr. at 201.) Later in January 2007, Dr. Mugawish noted that Plaintiff's "physical exam is unremarkable, including normal breath sounds." In February 2007, "spirometry and lung volumes appear[ed] within normal limits" and another chest x-ray taken on May 8, 2007, and was "normal." (Tr. at 181, 398.)

In addition, I suggest that the hypothetical questions accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and Plaintiff's own testimony that she is able to care for her dog, take care of her personal hygiene, go

outside three times a week when she goes to work, drive and ride in a car, shop in stores for groceries, handle her own finances, do dishes, dust, wipe counters, do laundry, fold clothes, make her bed, load and empty the dishwasher, read, watch television, sew, play cards, crochet, play croquet and play miniature golf. (Tr. at 154-57.)

### 4. Conclusion

For all these reasons, therefore, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

          s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
          CHARLES E. BINDER
Dated: March 24, 2011          United States Magistrate Judge


**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: March 24, 2011        By    s/Patricia T. Morris
                                       Law Clerk to Magistrate Judge Binder